IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
Omaha Division

| | | |
|---|---|---|
| BRANDON STRAKA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:22-cv-00434-JFB-SMB |
| | ) | |
| | ) | |
| NBCUNIVERSAL MEDIA, LLC *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM IN OPPOSITION TO DEFENDANT, NBCU'S, MOTION TO DISMISS OR TO TRANSFER VENUE

Plaintiff, Brandon Straka ("Plaintiff" or "Straka"), by counsel, pursuant to Civil Rule 7.1(b), respectfully submits this Memorandum in Opposition to Defendant, NBCUniversal Media, LLC's ("NBCU"),[1] motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), motion to dismiss pursuant to Rule 12(b)(3), or in the alternative to transfer this case to the Southern District of New York. [*ECF No. 16*].

## I.  INTRODUCTION

This is an action for defamation and false light invasion of privacy.  The case arises out of statements published by NBCU and its agents to over ten million primetime cable television viewers and social media followers.  The complaint alleges that NBCU singled out Straka and falsely accused him of committing the "Federal crime of storming

---

[1]  Plaintiff has filed notice of voluntary dismissal without prejudice of his claims against Defendants Chris Hayes and Ari Melber pursuant to Rule 41(a)(1)(A)(i).

the Capitol"; that NBCU misattributed statements to Straka that he never made; that NBCU falsely stated that Straka "[broke] into the Capitol" on January 6, 2021; and that NBCU falsely stated or implied that Straka was "convicted" of "trying to help attack police officers" – indeed, that he "confessed" and was found "guilty" of "helping attack police". [*ECF No. 1 ("Compl."), ¶¶ 8, 13*]. Straka's complaint expressly and repeatedly alleges that the statements published by NBCU are materially false, [*Id., ¶¶ 11, 14*] and that the statements "were not a fair or accurate report of the record, or any part thereof, in Straka's criminal case." [*Id., ¶ 20*; *see also ¶ 8 fn. 1*]. The complaint alleges that Straka suffered harm to his reputation in Nebraska, where Plaintiff lives, and where NBCU broadcast the statements to a vast audience of paid subscribers and social media followers. [*Id., ¶¶ 1, 7, 17, 26*].

The matter is before the Court on NBCU's motion to dismiss. The Court has subject matter jurisdiction. [*Compl., ¶ 5*]. For the reasons stated below, NBCU's motion should be DENIED.

## II.   <u>BACKGROUND</u>

### A.   *The Parties*

Plaintiff is a citizen of Nebraska. He lives in Omaha. He is the founder of the #WalkAway Campaign, a true grassroots movement that encourages and supports those on the Left to walk away from the divisive tenets endorsed and mandated by the Democratic Party of today. Plaintiff is a conservative journalist, political commentator, activist and prominent social media influencer. He was present on the Capitol grounds on January 6, 2021, but never entered the Capitol. He was arrested, pled guilty and was

convicted of one class B misdemeanor count of disorderly conduct in violation of 40 U.S.C. § 5104(e)(2)(D). [*Compl., ¶ 1*].

NBCU is a global media conglomerate that has employees and agents, owns property and transacts substantial business in Nebraska.  One of NBCUniversal's brands is "MSNBC".  Reaching more than 96 million households worldwide, including millions in Nebraska, MSNBC offers a full schedule of live news coverage and programming – 24 hours a day, 7 days a week.  MSNBC delivers breaking news and information across a variety of platforms, including its flagship digital platform, www.msnbc.com.  MSNBC also promotes its business in Nebraska and elsewhere via social media, including to its 5,390,000 YouTube subscribers and its 4,900,000 followers on Twitter.  Chris Hayes ("Hayes") is a political commentator, television anchor and activist.  Hayes hosts *All In With Chris Hayes* ("*All In*"), a program that is broadcast on MSNBC weeknights at 8:00 p.m.  Ari Melber ("Melber") is chief legal correspondent for MSNBC.  Melber is host of *The Beat with Ari Melber* ("*The Beat*"), a program that airs nightly at 6:00 p.m. on MSNBC.  Hayes and Melber operates multiple Twitter accounts.  They have millions of social media followers. [*Compl., ¶¶ 2-4*].

**B.      *The Statements***

On December 17, 2021, during a segment of *All In*, and on October 19, 2022, during a segment of *The Beat*, NBCU published the following statements of fact[2] of or concerning Straka:

---

[2]     NBCU concedes that the Statements at issue in this case are statements of fact and not pure opinions.

| No. | Statement |
|-----|-----------|
| 1 | "All of those people, those closer to Trump and those in the outer circles, all of them appear to have been smart enough not to commit the Federal crime of storming the Capitol live on television.  Brandon Straka is the exception". |
| 2 | "[Statement displayed on screen at 0:39] **BRANDON STRAKA: Take it away from him.  Take the shield!**[3] … Ya, the 'take the shield, take the shield', that's him [Brandon Straka] yelling that". |
| 3 | "If you put this together, it sure looks like Trump and his allies, including Meadows, were contemplating the scenario in which the mob marches to the Capitol and pro-Trump insurrectionists might be clashing with counter-protestors in the streets, hence the need to protect the pro-Trump people.  And now we got a guy [showing video of Brandon Straka] who was there, who was involved in the lead up to the insurrection, who was on the stage there at the rally the day before, who breaks into the Capitol". |
| 4 | "[Showing image of Brandon Straka] This individual, as you [Matt Schlapp] may know, was convicted in connection with the January 6 insurrection.  He was found to have been trying to help attack police officers". |
| 5 | "His name is Brandon Straka.  He confessed.  He confessed to being guilty.  He was found to [have been] helping attack police". |

[*Compl., ¶¶ 8, 13, 19* (each a "Statement" and collectively the "Statements")].  Straka

alleges that the Statements are "materially false" because:

- Straka did not commit the Federal crime of storming the Capitol;

- Straka did not say, "Take it away from him.  Take the shield!" – NBCU falsely attributed these Statements to Straka;

---

[3]      The Statement of Offense (Document 26, ¶ 9) in Straka's criminal case stipulates and finds that "Straka … observed others yelling to take a U.S. Capitol Police Officer's shield.  He recorded a video of what was happening, and in the video, he chimed in with the crowd, saying "take it, take it."  He did this between 2:30 and 2:45 p.m. on January 6 while outside the entrance to the U.S. Capitol in the restricted area on the Capitol Grounds.  Straka left the U.S. Capitol Grounds at approximately 3:00 p.m."  ***Nowhere*** does the Statement of Offense indicate in any way that Straka called for any action to be taken against any police officer.  The Statement of Offense also clearly establishes that Straka did ***not*** break into the Capitol. [*Compl., ¶ 8 fn. 3*].

- Straka did not break into the Capitol; and

- Straka did not confess and was not found guilty or convicted by any Court of helping to attack police officers.

[*Compl., ¶¶ 11, 14*]. Straka alleges that the defamatory Statements are complete fabrications, published with actual malice. [*Compl., ¶¶ 1, 12, 14, 15, 21, 25*].[4]

### III.  <u>STANDARD OF REVIEW</u>

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 fn. 3 (2007); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (2009).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds [on] which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the allegations contained in the complaint as true and draw reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 851 (8th Cir. 2010).

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations in plaintiff's complaint "must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," *Twombly*, 550 U.S. at 570, rather than merely "conceivable." *Id.*  Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Courts

---

[4]  NBCU agrees that the Statements are capable of a defamatory meaning and that Straka sufficiently alleges actual malice.

follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. First, the Court divides the allegations between factual and legal allegations; factual allegations must be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677. The Court should not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). The question at this preliminary stage is not whether a plaintiff might be able to prove his claim, but whether he has "adequately asserted facts (as contrasted with naked legal conclusions) to support" those claims. *Id.* When the allegations in a complaint, viewed in the light most favorable to plaintiff, could raise a claim of entitlement to relief, the complaint should not be dismissed for failure to set a claim under Rule 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679. Dismissal under Rule 12(b)(6) is appropriate only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).[5]

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court should bear in mind that while the Federal Rules of Civil Procedure require more specific

---

[5]     Although the Court can consider a broad range of documents on a motion to dismiss, NBCU asks the Court to go way beyond the pleadings and consider, *inter alia*, excerpts from Plaintiff's February 24, 2022 testimony to the House Select Committee to Investigate the January 6th Attack on the United States Capitol (*Spears Decl.*, Ex. 1(M), an article published by NPR, and other extraneous materials. If the Court considers these materials, the Court should convert NBCU's motion to one for summary judgment and deny the motion without prejudice.

pleading in certain cases, "defamation cases are not among them." *Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005).

## IV.  DISCUSSION

"Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., Concurring).  The press has no "special immunity from the application of general laws", nor does it have a "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).  "No man has a right to state of another that which is false and injurious to him.  A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper … The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation." *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825) (Story, J.); *Murphy v. Boston Herald, Inc.*, 449 Mass. 42, 865 N.E.2d 746, 767 (Mass. 2007) ("No one would disagree with the importance of upholding the freedom of the press.  Nor would anyone disagree about the media's right (and duty) to examine the affairs of the judicial branch of government and to criticize activities of judges and other court officials that do not meet the high standards expected of judges and the courts.  The press, however, is not free to publish false information about anyone (even a judge whose sentencing decisions have incurred the wrath of the local district attorney), intending that it will cause a public furor, while knowing, or in reckless disregard of, its falsity.").

Personal reputation derives from the common consent of humankind and has ancient roots.  The common law powerfully supports it.  A person's reputation is a value as old as the Pentateuch and the Book of Exodus, and its command as clear as the

Decalogue: "Thou shall not bear false witness against thy neighbor." The personal interest in one's own good name and reputation surpasses economics, business practices or money. It is a fundamental part of personhood, of individual standing and one's sense of worth. *Laumwood Medical Center, Inc. v. Sadow*, 43 So.2d 710, 729-732 (Fla. 4th DCA 2010). In *Rosenblatt v. Baer*, the United States Supreme Court emphasized that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

383 U.S. 75, 92-93 (1966); *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11-12 (1990) ("Good name in man and woman, dear my lord, Is the immediate jewel of their souls") (quoting WILLIAM SHAKESPEARE, OTHELLO, act 3 scene 3)); *Fuller v. Edwards*, 180 Va. 191, 198, 22 S.E.2d 26 (1942) ("[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg.").

Straka filed this action because NBCU impaired his reputation with demonstrable falsehoods. Straka seeks damages for the harm caused by NBCU's Statements.

## A.     *Straka Plausibly States a Claim of Defamation*

Under Nebraska law, a claim of defamation requires: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm

caused by the publication." *Norris v. Hathaway*, 5 Neb. App. 544, 561 N.W.2d 583, 585 (Neb. App. 1997) (citations omitted).[6]   In *Matheson v. Stork*, the Nebraska Supreme Court held that spoken or written words are slanderous or libelous per se:

> "if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one … In determining whether a communication is libelous or slanderous per se, the court must construe the questioned language "in its ordinary and popular sense" … Further, the circumstances under which the publication of an allegedly defamatory communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience must be taken into consideration."

239 Neb. 547, 552, 477 N.W.2d 156 (1991); *see Mauer v. Union Pacific Railway Company*, 2020 WL 12443342, at * 7-8 (D. Neb. 2020) ("The Court finds Mauer has adequately pled defamation.  First, Mauer has generally pled that statements about 'large quantities' of drugs and drug-dealing are false"); *Fry v. Doane University*, 2019 WL 6728259, at * 6 (D. Neb. 2019) ("Fry alleges that Belau falsely imputed, by spoken word, that Fry engaged in misconduct and was unfit to perform the duties of her employment and the mental-health profession. Fry alleges that as a result of Belau's defamatory statements, she suffered a loss of good will and damage to her reputation as a mental health practitioner.").

NBCU challenges one (1) element of Straka's claim of defamation and prematurely raise an affirmative defense.  Each matter will be addressed in order:

---

[6]         Related to sufficiently pleading a claim for defamation, Neb. Rev. Stat. § 25-839 (Reissue 2016) provides:

> "In an action for a libel or slander it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff, and if the allegation be denied, the plaintiff must prove on the trial the facts, showing that the defamatory matter was published or spoken of him."

1.      *The Statements Are Materially False*

As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication.  It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.*  Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

At the motion to dismiss stage in a defamation case, "a court must accept as false any statements which the Complaint alleges to be false." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).  Disputes over whether a statement is materially false cannot be resolved on a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g., Tholen v. Assist America, Inc.*, 970 F.3d 979, 985 (8th Cir. 2020) ("there is a factual dispute over whether the challenged statements in the case study are materially false.  This dispute prevents dismissal of a defamation claim under 12(b)(6)."); *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1052 (8th Cir. 2012) ("Because Cockram denies that she intentionally produced a return receipt with a racial slur, and produced evidence supporting this assertion, a genuine issue of material fact exists as to whether the gist of the first statement was true.  Thus, the district court erred by determining as a matter of law that the first statement was substantially true."); *Lundell Mfg. Co., Inc. v. American Broadcasting Companies, Inc.*, 98 F.3d 351, 358 (8th Cir. 1996) (only where the

underlying facts as to the gist or sting of the defamatory charge are undisputed may the trial court may determine material falsity or substantial truth as a matter of law).

Comparing NBCU's Statements to the actual truth alleged in Straka's complaint, it is beyond peradventure that the Statements are materially false.[7] *See Blankenship v. Napolitano*, 451 F.Supp.3d 596, 623 (S.D.W. Va. 2020) (CNN referred to the plaintiff as a "convicted felon," despite knowing that plaintiff was only convicted of the misdemeanor offense – motion to dismiss defamation and false light claims DENIED – "Calling the plaintiff a 'felon' could place him in a false light that a reasonable person could consider 'highly offensive.'"); *James v. Powell*, 154 Va. 96, 106-107, 152 S.E. 539 (1930) ("To say that a man committed a felony which he did not commit, is a libel, and this is true even though he had, in fact, committed another felony of the same general character.") (citation omitted); *see also Pan Am. Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc.*, 804 F.3d 59, 73 (1st Cir. 2015) ("All that is left to do then is compare the challenged defamatory comment … with what we take as true at this stage of the case

---

[7]     Straka's claims are not barred by the doctrine of judicial estoppel.  Straka pled guilty and was convicted of misdemeanor disorderly conduct.  He did not commit, was not charged, did not plead guilty and was not convicted of storming the Capitol, breaking into the Capitol, or aiding and abetting assault and battery of a police officer. *See Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402, 414 (2023) ("The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.") (citing *Western Ethanol Company, LLC v. Midwest Renewable Energy, LLC*, 305 Neb. 1, 938 N.W.2d 329, 344 (2020) ("Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.  This doctrine, however, is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.  We have held that bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated before the judicial estoppel doctrine may be invoked.").

(that plaintiffs never lost railcars carrying hazardous materials, even temporarily).  And having done this, we conclude that a sensible juror could find that a more precise explication of the TIH issue would have improved plaintiffs' public reputation—meaning we must vacate the grant of summary judgment on this article."); *Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos"); *Flynn v. Cable News Network, Inc.*, 2022 WL 3334716, at * 5 (S.D.N.Y. 2022) ("given the extreme negative connotations of being a QAnon follower, the Flynns have adequately alleged that being labeled a QAnon follower would have a different effect on the mind of a viewer than the pleaded truth."); *Nunes v. W.P. Company*, 2021 WL 3550896, at * 4 (D. D.C. 2021) (a reasonable juror could conclude that the article was materially false "because it stated that Nunes had made … a baseless claim (when he had not"); *Dickinson v. Cosby*, 17 Cal.App.5th 655, 692 (2017) ("The pleaded truth was that Cosby raped Dickinson; she wanted to tell the truth in her book; but her publisher forced her to replace it with a sanitized version of their encounter.  The gist of Cosby's statements, to the contrary, was that he had not raped Dickinson and she told the truth in her book.  The pleaded truth and the gist of the statements are incompatible.").

Even if there were a genuine argument regarding "material" falsity – and there is not – that dispute is for the Jury to resolve on a fully-developed record.

   2.      *The Fair Report Privilege Does Not Apply*

This case involves tort liability, and to resolve conflicts of law involving tort liability, the Nebraska Supreme Court has applied the Restatement (Second) of Conflicts of Laws § 146, which sets out the general rule that "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship". *O'Brien v. Cessna Aircraft Company*, 298 Neb. 109, 903 N.W.2d 432, 459 (2017).

Section 145 of the Restatement (Second) of Conflict of Laws sets out the "most significant relationship" test and provides that in addition to principles articulated elsewhere in the Restatement, the Court should take into account the following contacts:

   "(a)      the place where the injury occurred,

   (b)      the place where the conduct causing the injury occurred,

   (c)      the domicil, residence, nationality, place of incorporation and place of business of the parties, and

   (d)      the place where the relationship, if any, between the parties is centered.

The Restatement cautions, however, that these contacts are not to be given equal weight mechanically, but should each be considered in light of their relative importance with respect to the particular issue under consideration." *O'Brien*, 298 Neb. at 140, 903 N.W.2d at 432, 459 (2017); *see Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 141 (2nd Cir. 2022) (applying the doctrine of *lexi loci delicti* in a multistate defamation case, the substantive law of the state where the plaintiff incurred the greatest reputational injury applied to plaintiff's defamation claim, with a presumption that absent countervailing circumstances, a plaintiff suffers the most harm in his state of domicile).

Straka is a citizen of Nebraska.  He was injured in Nebraska. [*Compl., ¶ 7*].  The conduct causing the injury occurred nationwide, including in Nebraska where *All In* and *The Beat* were broadcast and republished to Nebraska citizens.  Nebraska has a significant interest in protecting its citizens from harm that occurs within Nebraska.  *See, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984) ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").  In *Keeton,* a New York resident sued Hustler magazine (an Ohio corporation) in New Hampshire, claiming that she had been libeled in five issues of the magazine, which was distributed throughout the country, including in New Hampshire, where Hustler sold 10,000 to 15,000 copies per month.  The United States Supreme Court correctly held that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement." *Id*. at 776 (emphasis in original).  Here, as in *Keeton*, false statements caused harm in Nebraska, where the false statements were circulated. *Id.* at 777 ("The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977).  The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").

Applying Nebraska's choice of law rules, Nebraska law controls.  Nebraska does not recognize a "fair report" privilege.

New York law recognizes certain privileges that shield a person or corporation from liability for defamation.  Section 74 of the New York Civil Rights Law[8] provides:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

"The fair and true report privilege has been described as an absolute privilege that is not defeated by the presence of malice or bad faith." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 477 (S.D.N.Y. 2012).  A statement is deemed a fair and true report only if it is "substantially accurate." *Karedes v. Ackerly Group, Inc.*, 423 F.3d 107, 119 (2nd Cir. 2005).  "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.*  "A fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185, 1187 (1979).

In assessing whether a publication is a fair and true report of a legislative or other official proceeding, the United States Supreme Court points out that the "publisher must add nothing of his own.  He must not state his opinion of the conduct of the parties, or impute motives therefor; he must not insinuate that a particular witness committed perjury.  That is not a report of what occurred; it is simply his comment on what

---

[8]     "The privilege afforded by Civil Rights Law § 74 is an affirmative defense to a claim of defamation." *Spitzer v. Greenberg*, 155 A.D.3d 27, 42, 62 N.Y.S.2d 372 (2017) (cited in *Lindberg v. Dow Jones & Company, Inc.*, 2021 WL 3605621, at * 10 fn. 122 (S.D/NY. 2021)).  As an affirmative defense, the applicability of the privilege cannot be resolved on a motion to dismiss under Rule 12(b)(6).  The Court should deny NBCU's motion without more, and allow the parties to conduct discovery and develop evidence.

occurred, and to this no privilege attaches.  Often such comments may be justified on another ground,—that they are fair and bona fide criticism on a matter of public interest, and are therefore not libelous.  But such observations, to which quite different considerations apply, should not be mixed up with the history of the case.  Lord Campbell said: 'If any comments are made, they should not be made as part of the report. The report should be confined to what takes place in court; and the two things—report and comment—should be kept separate.'  And all sensational headings to reports should be avoided.'".  *Dorr v. U.S.*, 195 U.S. 138, 152-153 (1904) (quoting Newall on Defamation, Libel and Slander, chap. 19, § 153)).

NBCU's Statements are not protected by the fair report privilege for several reasons.  First, NBCU's Statements at issue in this action are not a report of Straka's misdemeanor disorderly conduct case or any charge or pleading or Order filed therein. Counsel for NBCU grossly misrepresents Straka's activities on January 6, 2021, his "admissions", and the scope of the "disorderly conduct" to which he plead guilty.  Straka never committed the "Federal crime of storming the Capitol", and he was never accused of committing any such crime.  Straka did not "break into the Capitol",[9] and he was never accused of that crime or any related crime, including trespassing.  Straka did not "confess" to helping assault a police officer, and he was never charged, found guilty or convicted of any such crime.  NBCU fabricated these Statements out of whole cloth.  No "fair report" shield protects this kind of egregious misconduct and over-reaching. Second, the Statements are not a "fair" or "substantially accurate" report of the

---

[9]     There is a material difference immediately understood by viewers between the Capitol "grounds" and the Capitol.  NBCU did not state that Straka broke through "barriers the Capitol police put up".  NBC represented that Straka broke "into" the Capitol.

proceedings in Straka's criminal case.  Indeed, NBCU misrepresented the contents of the Statement of Offense, and misattributed words to Straka. [*Compl., ¶ 8 fn. 3*].[10]  *Compare Dershowitz v. Cable News Network, Inc.*, 541 F.Supp.3d 1354, 1365-1366 (S.D. Fla. 2021) (use of truncated video clip of plaintiff's argument at impeachment trial was not "fair" or "accurate").  Finally, the Statements clearly reflect false facts added to the narrative by NBCU, including the false fact that Straka "stormed the Capitol", broke "into the Capitol" and aided and abetted the assault and battery of police officers.  Under *Dorr*, NBCU's Statements are clearly not privileged. *See Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 521 (S.D.N.Y. 2012) ("Section 74 does not afford protection if the specific statements at issue, considered in their context, suggest more serious conduct than that actually suggested in the official proceeding.") (internal quotation marks omitted and alteration adopted).

The Court should deny NBCU's motion.  Even if New York law applies – and it does not – the fair report privilege is an affirmative defense and the facts pled by Straka demonstrate that the Statements are neither fair nor substantially accurate.

**B.**     ***Straka Sufficiently Alleges A Claim of False Light Invasion of Privacy***

NBCU does not contend that Straka's false light claim suffers from a lack of facts.

Rather, NBCU argues that Straka's false light claim is subsumed within his defamation claim. *See Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 598 (Neb. 2011) ("[i]n order to survive as a separate cause of action, a false light claim must

---

[10]     As a journalist reporting on the situation, Straka merely chimed in with and repeated the words being stated by the crowd:  "Take it.  Take it".  He did not ever encourage anyone to take a shield from a police officer or attack any police officer. NBCU manufactured a course of conduct that Straka never engaged in.

allege a nondefamatory statement.  If the statements alleged are defamatory, the claims would be for defamation only, not false light privacy"; "a statement alleged to be both defamatory and a false light invasion of privacy is subsumed within the defamation claim and is not separately actionable" (internal quotation marks and citations omitted)).

At the pleading stage, Straka is not required to elect his remedies. *See, e.g., Bojanski v. Foley*, 18 Ben. App. 929, 943, 798 N.W.2d 134 (2011) (construing § 20-209 to prevent "multiple recoveries from a single publication", but not to force a plaintiff, at pleading stage, to "elect among libel, slander, and invasion of privacy with respect to the claim a plaintiff advances resulting from a single publication").

## C. *Venue Is Proper*

Title 28 U.S.C. § 1391 governs the venue in all civil actions brought in District Courts of the United States.  Pursuant to § 1391(b)(1), a civil action may be brought in a judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located."[11]  Section 1391(b)(2) permits a civil action to be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred".

### 1. *NBCU Failed To Comply With Local Civil Rule 7.1(a)*

The Court should deny NBCU's motion to dismiss for improper venue or, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a) because NBCU failed to comply with Local Civil Rule 7.1.

---

[11]     A corporate defendant, such as NBCU, is deemed to reside in any district where it is subject to the Court's personal jurisdiction. 28 U.S.C. § 1391(c)(2).  NBCU did not challenge personal jurisdiction by motion under Rule 12(b)(2).  Therefore, it has waived any objection to the Court's personal jurisdiction. *See* Fed. R. Civ. P. 12(h)(1)(A).

Local Civil Rule 7.1 provides that "[a]ll miscellaneous motions, applications, requests, and petitions are filed and considered under this rule.  Unless this rule states otherwise, a party who does not follow this rule may be considered to have abandoned in whole or in part that party's position on the pending motion."  NBCU failed to file a supporting brief that addressed the venue issues. *See* Local Civil Rule 7.1(a)(1)(A).  Its motion to dismiss pursuant to Rule 12(b)(3) and its alternative motion to transfer should be denied without more.

### 2.    *NBCU Resides In Nebraska*

NBCU is subject to the Court's personal jurisdiction.  Therefore, it resides in Nebraska and venue is proper under § 1391(b)(1). *See, e.g., Faulhaber v. Equifax Information Service, LLC*, 2021 WL 5140791, at * 3 (E.D. Tex. 2021) (Mazzant, J.) ("Because the defendants are subject to personal jurisdiction in the Eastern District of Texas, they are deemed to reside here.  Thus, venue is proper.  Further, because venue is proper, the Court is not compelled to dismiss under § 1406.") (citation omitted).

### 3.    *Venue Is Proper Under § 1391(b)(2)*

Pursuant to § 1391(b)(2), a civil action may be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred".  It is well-established that § 1391(b)(2) "does not limit venue to the place where all or most of the events giving rise to the claim occurred; the statute places venue in every district where a 'substantial part' of the events occurred." *Marley v. Jetshares Only, LLC*, 767 F.Supp.2d 1337, 1339 (S.D. Fla. 2011) (quotation omitted).  When evaluating whether a substantial part of the events giving rise to a claim occurred in a particular venue, Courts consistently hold that "substantial events occur[] within a venue when harm or injury was

suffered in that venue." *Mobile Diagnostic Imaging, Inc. v. Gormezano*, 2012 WL 3244664, at * 2 (S.D. Fla. 2012) (citations omitted); *see id. Fentriss v. Gateway Bank FSB*, 2016 WL 4097066, at * 3 (M.D. Fla. 2016) ("Fentriss suffered the injuries from the defendants' conduct at his residence in the Middle District of Florida.  Thus, in accord with Section 1391(b)(2), 'a substantial part of the events...giving rise to' Fentriss's claims occurred in the Middle District of Florida.").

Straka alleges that a substantial part of the events giving rise to his claim of defamation occurred in Nebraska, including publication of the false and defamatory Statements and Straka's damages. [*Compl., ¶ 7*].  Accordingly, the District of Nebraska is a proper venue. *Hawbecker v. Hall*, 88 F.Supp.3d 723, 731 (W.D. Tex. 2015) ("In a defamation case, the Court may consider the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of "a substantial part of the events" under 1391(b)(2) … The Complaint alleges injury to Hawbecker's reputation in the San Antonio Division of the Western District of Texas.  Therefore a substantial part of the events giving rise to his claim is the injury to his reputation in San Antonio, Texas.") (citing *Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group*, 923 F.Supp. 950, 958 (S.D. Tex. 1996) (finding venue was proper in the Southern District of Texas when a California defendant sent an allegedly defamatory letter to Texas)); *Santa's Best Craft, LLC v. Janning*, 2003 WL 21504522, at * 2 (N.D. Ill. 2003) (finding that "a substantial part of the events" giving rise to the plaintiff's defamation claim occurred in the district "where the allegedly defamatory statement [was] published" and where "the injury (if any) from the defamation was incurred"); *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.*, 2008 WL 4058014, at * 3 (M.D. Fla. 2008)

("Capital Corp. alleges that the website was accessed in this District, that it suffered harm to its reputation in this District, and that it suffered an economic injury in this District. As a result, the allegations are sufficient to establish venue under section 1391(b)(2).");[12] *DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449, at * 6 (E.D. Pa. 2000) ("In defamation cases … courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district."); *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F.Supp.2d 1, 8 (D. D.C. 2009) (internal quotations and citations omitted) ("In tort cases, when determining whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred ... in a particular district for purposes of § 1392(b)(2), ... courts focus on ... the place where the allegedly tortious actions occurred and the place where the harms were felt.").

Venue is proper under § 1391(b)(2).

**D.    *This Action Should Not Be Transferred To New York***

Title 28 U.S.C. § 1404(a) provides that for the "convenience of the parties and witnesses" and "in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought."[13]  Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org.,*

---

[12]      This Court has cited *Capitol Corp.* as authority. Nebraska Courts follow the same rule. *See, e.g., Gridiron Management Group, LLC v. Wranglers*, 2012 WL 5187839, at * 6 fn. 6 (D. Neb. 2012).

[13]      Plaintiff agrees that this action might have been brought in the United States District Court for the Southern District of New York, where NBCU is subject to personal jurisdiction.

*Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Courts consider several factors when balancing the convenience of the parties and witnesses, such as: (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  "[S]heer numbers of witnesses will not decide which way the convenience factor tips ... [and] [m]erely shifting the inconvenience from one side to the other ... obviously is not a permissible justification for a change of venue." *Id.* at 696-697 (quotations and citations omitted).  When considering whether the interests of justice support a transfer of venue, Courts look at "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Id.* at 696.

Generally, "federal courts give considerable deference to a plaintiff's choice of forum." *Id.* at 695; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  The substantial deference that is generally given to a plaintiff's choice of forum is given even "more weight when the chosen forum is also the plaintiff's residence." *Venteicher v. Smyrna*, 2009 WL 3254498, at * 10 (D. Neb. 2009) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2nd Cir. 2000)).

1. *Plaintiff's Choice of Forum*

Plaintiff lives in Nebraska. His choice of forum is entitled to great deference and should not be disturbed.

2. *Convenience of the Parties*

As both parties will be required to engage in similar cross-country travel wherever this case is litigated, transfer to New York would merely shift the burden to Straka. Under these circumstances, transfer is not appropriate. *Buck's, Inc. v. Buc-ee's, Ltd.*, 2009 WL 1839007, at * 7 (D. Neb. 2009) ("Buck's … resides here in Nebraska, and thus in Nebraska only one party will have to travel for trial. The court finds that the convenience of the parties and judicial efficiency are best served by the litigation of this dispute in the district where the brunt of the alleged injury has taken place."); *VS Techs, LLC v. Twitter, Inc.*, 2011 WL 11074291, at * 7 (E.D. Va. 2011) ("transfer is inappropriate where it robs a plaintiff of his chosen forum and merely shifts the balance of inconvenience from defendant to plaintiff.").

3. *Witness Convenience and Access*

In this case, Nebraska is convenient for Straka's witnesses, but inconvenient for NBCU's witnesses. Under these circumstances, transfer is inappropriate. The result of transfer would serve only to shift the balance of inconvenience to Straka. Further, NBCU does not indicate that witnesses are unwilling to travel to Nebraska or that videotape depositions will not suffice. *See Mullins v. Equifax Info. Servs., LLC*, 2006 WL 1214024, at * 8 (E.D. Va. 2006) ("[T]he moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction.") (internal quotation marks omitted).

4.      *Location Of Documents And Ease Of Access To Sources Of Proof*

Written discovery in defamation cases is almost entirely electronic.  Although relevant documentary evidence may be located in New York, where *All In* and *The Beat* were broadcast from, "[i]n a world with ... copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at * 3 (S.D. Fla. 2012).

This factor is neutral and should be afford little weight.

5.      *Relative Means Of The Parties*

NBCU is a subsidiary of Comcast Corporation, which is a large public company. [*See ECF No. 20 (Corporate Disclosure Statement)*].  NBCU has the financial means and is uniquely positioned to litigate in any District in the United States.  Straka is an individual battling a giant.

Information on the parties' relative means weighs against transfer.

6.      *Forum's Familiarity With Governing Law*

This factor is neutral.  Even if New York law applies to certain issues, District Courts have little trouble applying the laws of other states.

7.      *Trial Efficiency And The Interests of Justice In Totality*

In weighing this factor, Courts consider administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum.

This factor is neutral, although this action will likely get to trial faster if it remains here.

Viewing the record in the light most favorable to Straka, and considering all relevant factors, the Court should deny NBCU's motion to transfer.

### Certificate

In accordance with Local Civil Rule 7.1(d)(3), Counsel for Plaintiff certifies and affirms that this brief complies with word limits in the Local Rule. This brief contains 6,862 words. Counsel relied on the word-count function of his word-processing software (Microsoft Word Office 360), and certifies that the function was applied to include all text, including the caption, headings, footnotes, and quotations.

### CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests the Court to deny NBCU's motion to dismiss or transfer venue.

April 26, 2023

Signature of Counsel on Next Page

BRANDON STRAKA


By:   */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:  (804) 501-8272
      Facsimile:  (202) 318-4098
      Email:  stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      William F. McGinn #24477
      McGINN LAW FIRM
      20 North 16th Street
      Council Bluffs, Iowa 51501
      Telephone: (712) 328-1566
      Facsimile: (712) 328-3707
      Email: bmcginn@themcginnlawfirm.com

      *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.


By:___*/s/ Steven S. Biss*_____
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

William F. McGinn #24477
McGINN LAW FIRM
20 North 16th Street
Council Bluffs, Iowa 51501
Telephone: (712) 328-1566
Facsimile: (712) 328-3707
Email: bmcginn@themcginnlawfirm.com

*Counsel for the Plaintiff*