## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA
### Omaha Division

BRANDON STRAKA,

              Plaintiff,

     v.

NBCUNIVERSAL MEDIA LLC, CHRIS HAYES and ARI MELBER,

              Defendants.

Case No. 8:22-cv-00434

Hon. Joseph F. Bataillon

---

### DEFENDANT NBCUNIVERSAL MEDIA, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)

Plaintiff Brandon Straka ("Straka") pled guilty to and was convicted of criminal wrongdoing for his participation in the riot at the U.S. Capitol on January 6, 2021. In his Opposition ("Opp.") to Defendant NBCUniversal Media, LLC ("NBCU")'s Rule 12(b)(6) Motion to Dismiss, Plaintiff does not deny this fact. Nor does he deny he made binding judicial admissions in his criminal case about his conduct that day. Those admissions require dismissal. For that reason and others set forth herein and in Defendant's opening brief, as a matter of law, Plaintiff cannot meet his burden of proving material falsity regarding any of the complained-of statements in the two Segments.

Plaintiff's Opposition rehashes his Complaint's allegations without addressing the underlying facts he stipulated to in pleading guilty, or addressing (much less distinguishing) the controlling legal principles and authorities cited by NBCU that foreclose his claims. Plaintiff says next to nothing on the substantive points because he has no viable claims, and his own admissions doom his Complaint as a matter of law.

1

What Plaintiff offers instead (and in abundance) is overheated rhetoric, literary references, and lofty orations on the importance of reputation that ring hollow given Plaintiff's conceded and very public wrongdoing on Jan. 6, which he promoted on his social media platforms, then apologized for profusely in allocuting to his crime. To say that the Segments "are complete fabrications" of his role in Jan. 6 (Opp. 5) made up of "whole cloth" and the product of "egregious misconduct and over-reaching" (*id.* 16) is pure nonsense. The Segments accurately describe Plaintiff's conduct that day—supported by facts he stipulated to in his plea agreement, and other public record admissions.  Plaintiff cannot survive dismissal by ignoring his admitted conduct, mischaracterizing what the Segments actually say, and splitting hairs over immaterial differences that do not change the gist of the statements at issue.

Independent from the merits, this case does not belong in this District. The Complaint and undisputed evidence demonstrate that transfer to SDNY is warranted under 28 U.S.C. § 1404. Once again failing to address NBCU's arguments, Plaintiff completely ignores the evidence of his significant contacts with New York—where he lived for twenty years from 2000–2020 (and where his website says he still lives) and where he continues to run his #WalkAway business—as well as the utter absence of any substantive Nebraska connection to this case.[1]

## I.     THE RULE 12(B)(6) MOTION TO DISMISS SHOULD BE GRANTED.

### A.     Plaintiff Concedes That Criminal Case Records Cited in the Complaint Are Properly Before the Court and So Are His Other Public Record Admissions.

Plaintiff concedes that "the Court can consider a broad range of documents on a motion to dismiss" (Opp. 6 n. 5), and does not dispute (because he could not) that the Court can properly

---

[1]  The same day he filed his Opposition, Plaintiff voluntarily dismissed Chris Hayes ("Hayes") and Ari Melber ("Melber") without prejudice. (Doc. 23.) NBCU concedes that venue is now proper in this District under 28 U.S.C. § 1391(b)(1). However, the dismissal of Hayes and Melber makes transfer to SDNY all the more appropriate. (*See infra* Section II.)

consider public records from his criminal case on this Motion, as those records are referenced in and "embraced by the pleadings." (*See* 12(b)(6) Open. Br. [Doc. 19] at 2 (citing cases).) Plaintiff quarrels that the public record of his House Select Committee testimony is "extraneous" (Opp. 6 n. 5), but this too is properly before the Court on judicial notice. (*See* 12(b)(6) Open. Br. 2–3 (citing cases).)

There also is no basis for Plaintiff's legally unsupported assertion that "the Court should convert NBCU's motion to one for summary judgment and deny the motion without prejudice." (Opp. 6 n. 5.) The controlling case law (which Plaintiff ignores) holds that where, as here, materials are properly considered on a 12(b)(6) motion, converting it to one for summary judgment is *not* appropriate. *See, e.g.*, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

**B.    Plaintiff's Argument That Material Falsity Cannot Be Decided On a Rule 12(b)(6) Motion Ignores and Misstates the Law.**

Plaintiff's pronouncement that "[d]isputes over whether a statement is materially false cannot be resolved on a motion to dismiss" (Opp. 10) ignores the many cases, including in this Circuit, that do just that. (12(b)(6) Open. Br. 9–11 (citing cases dismissing on substantial truth).) He also misstates the holdings and import of the cases he cites.

For example, Plaintiff cites *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) for the proposition that "[a]t the motion to dismiss stage in a defamation case, 'a court must accept as false any statements which the Complaint alleges to be false'" (citing *Chapin v. Knight-Ridder, Inc*., 993 F.2d 1087, 1092 (4th Cir. 1993)). (Opp. 10.) Notably, *Chapin affirmed dismissal* of defamation claims on substantial truth, fair report, and other grounds. Moreover, neither *Goulmamine* nor the other cases Plaintiff cites involved material embraced by the Complaint and judicially noticeable public records. And neither that case, nor any other case he cites, purports to

override the rule that such materials are properly considered on a motion to dismiss, and control over mere allegations. (12(b)(6) Open. Br. 3 (citing cases).)

Other cases Plaintiff cites involve "*a factual dispute* over whether the challenged statements in the case study are materially false," *Tholen v. Assist America, Inc.*, 970 F.3d 979, 985 (8th Cir. 2020), but acknowledge that "*where the underlying facts as to the gist or sting of the defamatory charge are undisputed*," the Court may determine material falsity or substantial truth as a matter of law. *Lundell Mfg. Co., Inc. v. Am. Broad. Cos., Inc.*, 98 F.3d 351, 358 (8th Cir. 1996). Here, there is no "factual dispute" because the "underlying facts"—Plaintiff's conduct—are "undisputed" and *stipulated to* by Plaintiff in his criminal case.

Further, Plaintiff acknowledges that judicial estoppel "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." (Opp. 11 n. 7.) But he has no answer to the authorities specifically—and appropriately—applying that doctrine in the circumstances at bar. (12(b)(6) Open. Br. § I.A.) As in those cases, Plaintiff's "assertion of falsity" here is *contrary to* "*the facts underlying*" his guilty plea to which he "*stipulated as part of his plea.*" *Hobgood v. Hearst Comm'cns, Inc.*, 2019 WL 6352760, *2 (D.N.H. Oct. 18, 2019) (emphasis added) (dismissing defamation complaint).

### C.    Plaintiff's Opposition Confirms He Cannot Meet His Burden of Proving Material Falsity.

Plaintiff does not dispute that material falsity is his burden. He also concedes the applicable standard: "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. . . . A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (Opp. 10,

4

quoting *Masson v. New Yorker*, 501 U.S. 496, 516–17 (1991).)[2] Plaintiff cannot meet this standard. His attempts to camouflage his dispositive admissions with long citations to inapposite case law and by misrepresenting the Segments at issue do not compel a different conclusion.

Plaintiff was "arrested, pled guilty and was convicted" of a federal crime for his participation in the Capitol riot. (Compl. ¶ 1.) While Plaintiff argues that he only "pled guilty to and was convicted" of a "misdemeanor" and was not convicted of a "felony" (Opp. 11 n. 7), the Segments at issue *never say that he was convicted of a felony*. Not once. Nor do the Segments discuss what chapters of the U.S. Code he violated; they accurately state that he was held criminally liable for a federal offense and describe *his admitted conduct that day*.[3] The underlying facts to which he stipulated as part of his guilty plea support the substantial truth of the actual statements in the Segments.

For purposes of substantial truth, what matters is *the conduct underlying his federal conviction*—what Straka *actually did by his own stipulation* in his criminal case—and whether that conduct supports the "the substance, the gist, the sting" of the complained-of statements. *Masson*, 501 U.S. at 517. As a matter of law, there is no question that it does. Plaintiff's admissions end this case, as his "position in this proceeding" is "clearly inconsistent with his assertions at the time of his plea." *Robinson v. Globe Newsp. Corp.*, 26 F.Supp.2d 195, 200 (D. Me. 1998) (dismissing complaint).

---

[2] The standard is the same under either New York and Nebraska law; indeed it is a federal constitutional mandate. (12(b)(6) Open. Br. 8–9.) Plaintiff does not argue otherwise.

[3] Plaintiff's conduct was the basis for several federal charges, including violating 18 U.S.C. § 231(a)(3) (aiding or abetting another to interfere with a law enforcement officer), a felony punishable by up to five years in prison. (Spears Decl. Ex. 1(I) at PageID#108, 114.) To avoid trial on that charge and obtain a lesser sentence, Plaintiff pled guilty to "Disorderly and Disruptive Conduct in the Capitol Building or Grounds" in violation of 40 U.S.C. § 5104(e)(2)(d), which addresses conduct "at any place" in either "the Grounds or in any of the Capitol Buildings."

In pleading guilty, Plaintiff stipulated, among other things:

- "[Straka] *knowingly entered the restricted area at the U.S. Capitol Grounds*. . . . While in the restricted area, knowing he was not authorized to be there, . . . [Straka] *engaged in disruptive conduct by participating, along with others, in yelling 'go, go, go' to encourage others to enter the U.S. Capitol while the U.S. Capitol Police were making their best efforts to prevent people from doing so*." (Spears Decl. Ex. 1(K), Stmt. of Offense,  ¶¶ 8–9 (emphasis added).)

- "Straka also observed others yelling *to take a U.S. Capitol Police Officer's shield*. He recorded a video of what was happening, and in the video, *he chimed in with the crowd, saying 'take it, take it.' He did this . . . while outside the entrance to the U.S. Capitol in the restricted area on the Capitol Grounds*." (*Id.* ¶ 9) (emphasis added).)

- "[Straka] knew . . . that he did not have permission to enter the Grounds, and . . . did so *with the intent to impede, disrupt, or disturb* the orderly conduct of a session of Congress." (*Id.* ¶ 10 (emphasis added).)

If that were not enough, Plaintiff admitted before the House Select Committee that he sent a text message on January 6 in the "Stop the Steal Patriots" group chat, stating: "Fuck no, I'm at the Capitol and *just joined the breach*. I just got gassed. Never felt so fucking alive in my life." (Spears Decl. Ex. 1(M) at 71:15–72:5 (emphasis added).)

Waving away those inconvenient established facts, Plaintiff resorts to precisely the kind of "fine splitting of semantic hairs" that the law refuses to credit in the substantial truth and material falsity analysis. *Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016). But no amount of after-the-fact shading or labelling by Plaintiff alters the substantial truth of the complained of statements in both Segments.

*Hayes Segment.*  Plaintiff cannot meet his burden on material falsity as to the complained-of statements in the Hayes Segment given his own stipulated plea and admissions.

- *Statements 1 and 3* (referencing "the Federal crime of storming the Capitol" and "break[ing] into the Capitol").

There is no "Federal crime of storming the Capitol"—but there are a host of federal criminal offenses applicable to those, like Plaintiff, who were at the Capitol and joined in the riot with the intent to disrupt the counting of electoral votes. In pleading guilty to one of those federal offenses, Plaintiff admitted breaking into the clearly restricted Capitol Grounds with the intent to impede Congress, where he exhorted a violent mob to take a police officer's protective gear. It is not just substantially but *literally* true that he "stormed the Capitol": right along with other "Patriots," he pushed past police barricades and mounted the stairs of the building itself, within feet of the entrance. To paraphrase then-Circuit Judge Gorsuch, Plaintiff "[i]sn't just someone who was a material witness to the [Jan. 6 insurrectionists'] criminal designs. He has personally participated in [their] unlawful activities." *Bustos v. A&E Television Networks*, 646 F.3d 762, 768 (10th Cir. 2011) (affirming dismissal).

Plaintiff has little to say in response. He attempts to argue (in a footnote) that he did not "break into" the Capitol because there is a "material difference" between "the Capitol 'grounds' and the Capitol." (Opp. 16 n. 9.) That too is useless hairsplitting. It is *literally* true, in Plaintiff's own words, that he "*joined the breach*" at the Capitol, "breaking" past the barricades into the restricted areas of the Capitol Grounds, and pled guilty to "*a federal crime*" for so doing. That Plaintiff says he ended up not crossing the building's threshold does not compel a different conclusion. It is beyond dispute that the "Capitol" includes the restricted Capitol Grounds, which as Plaintiff admitted, were demarcated on Jan. 6 by barriers the Capitol Police erected and were striving to defend against the mob's onslaught. (Spears Decl. Ex. 1(K), Stmt. of Offense ¶¶ 1, 2, 5.)

7

Plaintiff's only other response (again in a footnote) is to fault NBCU for not specifying that Straka broke through "barriers the Capitol police put up." (Opp. 16 n. 9). But the Hayes Segment also *nowhere states that Straka entered the "building"* (and instead shows footage of him *outside* the building exhorting the mob). Again, Plaintiff ignores the actual Segment and language at issue, which simply states "he broke into the Capitol"—which is what he admittedly did by breaking into the Capitol grounds.

Further, even if any of this could be characterized as technically "false"—which it is not—that would not change the "gist or sting" of the "true" conduct or have a different effect on the mind of the viewer given everything Plaintiff admits he did and said. Plaintiff admits that his intent was to disrupt Congressional business, he broke past the police barriers at the Capitol, he was at the threshold of the building itself and on the cusp of entering with the mob yelling "go, go, go" and was only dissuaded when told the goal of disruption was achieved and tear gas was launched (Spears Decl. Ex. 1(K), Stmt. of Offense ¶¶ 8–10), boasting in the moment that he was "at the Capitol and *just joined the breach*. I just got gassed. Never felt so fucking alive in my life." (*Id*. Ex. 1(M) at 71:15–72:5 (emphasis added).)[4]

Finally, Plaintiff does not address the *Burmeister* cases, which dismissed defamation complaints where statements that the plaintiff "participated in the seditious takeover of the capitol" on Jan. 6 and bragged about "storming" the Capitol were substantially true based, in part, on the plaintiff's pride in taking a selfie with the "[f]irst guy to storm the [Capitol]." (12(b)(6) Open. Br. 14–15.) Here, Plaintiff *both* personally participated in the "storming" and lauded it on Twitter afterwards.

---

[4] *See also* Spears Decl. Ex. 1(I) at PageID#111 (Plaintiff's tweet that he was "close to entering" the Capitol building when the police started using "tear gas"); *id.* at PageID#110–111 (Plaintiff's video "stat[ing] that he was within 10 to 20 feet of the building when he saw 'bursts of teargas coming out of the doors'" and left after being told by one of the mob "'They've cleared Congress. Everybody's left. There's no one else inside. Everybody turn around'").

8

- ***Statement 2*** (Plaintiff said "Take it away from him. Take the shield!").

Plaintiff's parsing of the precise words he used to exhort his compatriots to "take" a police officer's shield is frivolous. (Opp. 4 & n. 3.) In the Statement of Offense, Plaintiff admitted to yelling "take it, take it" as several people in the crowd grabbed and successfully did "take" the officer's shield away from him. (Spears Decl. Ex. 1(K), Stmt. of Offense ¶ 9.) Plaintiff's conduct has the same gist or sting whether he said "[t]ake it away from him" or "[t]ake the shield!" versus "take it, take it.'"

Plaintiff further argues that NBCU "misattributed words to Straka" because he was "a journalist reporting on the situation" and "merely" repeated "the words being stated by the crowd: 'Take it. Take it'. He did not ever encourage anyone to take a shield from a police officer or attack any police officer." (Opp. 17 n. 10.) That is simply ludicrous: as the recorded and admitted evidence shows, Straka was *not* merely a "reporter." He was an active participant in the riot who pleaded guilty for his admitted conduct. Plaintiff has already once been admonished by the sentencing judge in his criminal case for seemingly attempting to "walk back" his confession (12(b)(6) Open. Br. 18 n. 8); this attempt to minimize his confessed participation is no less offensive, and certainly does not save his defamation claim.

***Melber Segment (Statements 4 and 5).***  Plaintiff repeats his allegation that the statements in the Melber Segment are "materially false" because he "did not confess and was not found guilty or convicted by any Court of helping to attack police officers." (Opp. 5.) This is also wrong.

To be clear, the Melber Segment does not say that Plaintiff himself engaged in violence— only that he "tried" to "help." Plaintiff does not and could not dispute that he "confessed" to conduct that made him complicit in and culpable for the attack on the police officer. His plea agreement stipulation (along with the video documenting his actions) establish that he in fact *encouraged the mob* to physically confront outmanned Capitol Police, including by galvanizing them to disarm a police officer and then celebrating their success. (*See* 12(b)(6) Open. Br. 17–18; Compl., p. 4 n. 1

(admitting Statement of Offense "stipulates *and finds*" that Straka "chimed in with the crowd, saying 'take it, take it'") (emphasis added).)

Melber fairly and accurately described Plaintiff's admitted encouragement as "trying to help" an attack on a police officer. The gap between the complained-of statement and the sting of the stipulated facts is marginal at best—certainly no wider, for example, than describing a plaintiff as a "member" of a vicious prison gang when in fact he had only conspired with them (*Bustos*, 646 F.3d at 762) or saying that plaintiff was arrested "in connection to" the Oklahoma City bombing when in fact he was charged with an unrelated incident resulting from the investigation (*Nichols v. Moore*, 477 F.3d 396, 401 (6th Cir. 2007)).

Ignoring the damning public record facts, and the wealth of case law rejecting similar attempts to found material falsity on "fine and shaded distinctions" (12(b)(6) Open. Br. 9–10), Plaintiff cites a series of disparate cases, all of which are factually inapposite, none of which involve a defamatory gist that plaintiff judicially admitted, and most of which stand for the irrelevant proposition that calling someone a convicted felon when they aren't may be defamatory. (Opp. 11–12; *see* Compl. ¶ 11.) That is, definitively, not this case.

Again, neither Segment refers to Straka as a felon or having committed felonies. And, contrary to Plaintiff's persistent misstatement (Opp. 11 n. 7), Melber did not use technical language like "aiding and abetting." The language used in the Segments did not have to be technically precise, much less spell out with legalistic precision that the crimes were misdemeanors not felonies, in order to be substantially true as a matter of law, particularly since neither Segment addresses the classification of Plaintiff's conviction at all.[5]

---

[5] Indeed, even where reports have expressly mischaracterized offenses as specific felonies, courts have found them substantially true. *See, e.g., Anderson v. Cramlet*, 789 F.2d 840, 845 (10th Cir. 1986) (immaterial that plaintiff wrongly labeled a "kidnaper" when actually convicted of violating custody order); *Simonson v. United Press Int'l, Inc*., 654 F.2d 478, 481–82 (7th Cir. 1981) (reporting person charged

### D.    The Fair Report Privilege Independently Bars Plaintiff's Complaint.

Plaintiff argues that "[a]pplying Nebraska's choice of law rules, Nebraska law controls" and "Nebraska does not recognize a 'fair report' privilege." (Opp. 14.)[6] Yet, Nebraska has little to nothing to do with this case and it is New York's law that should apply *generally*. (*See infra* Section II.A.3) But even if it did not, under the doctrine of dépeçage—which this Court has recognized applies under the Restatement—New York law would govern applicable privileges. (*See* 12(b)(6) Open. Br. 19.) Inadvertently, Plaintiff's brief acknowledges the basis for the doctrine's issue-by-issue analysis: that the Restatement contacts "are not to be given equal weight mechanically, but should each be considered *in light of their relative importance with respect to the particular issue under consideration*." (Opp. 13.) Here, because Plaintiff's claims are based on national news reports written and produced by New York residents that were broadcast from New York, New York's interest in applying its privilege law is paramount.

Plaintiff concedes that under New York law, the fair report is an absolute privilege that is not defeated by malice and that a "fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." (Opp. 15 (citations omitted).) For purposes of the New York fair report statute, Civil Rights Law § 74, a statement is "fair and true" if it is "substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Daleiden v. Planned*

---

with "rape" when actually charged with second degree sexual assault was substantially true); *Lawrence v. Altice USA*, 841 F. App'x 273, 275–76 (2d Cir. 2021) (even though news report incorrectly stated that plaintiff was charged with "stalking" when in fact he was only arrested for breaching the peace, report was substantially true).

[6] It is incorrect to say Nebraska "does not recognize" a fair report privilege; more accurately, it appears that, in contrast to New York, the privilege is not absolute but may be defeated by a showing of malice, which is not plausibly alleged here.

*Parenthood Fed'n*, 2022 WL 1013982, *2 (2d Cir. Apr. 5, 2022). Section 74 is an independent ground for dismissal.[7]

While declining to engage with any of the fair report authority cited by NBCU, Plaintiff reaches back to 1904 for commentary on the fair report privilege, opining that "If any comments are made, they should not be made as part of the report. . . ." (Opp. 16, quoting *Dorr v. U.S.*, 195 U.S. 138, 152–153 (1904), quoting Newall on Defamation, ch. 19, § 153.)

Suffice it to say, even if Plaintiff's argument would have had any merit in 1904, the law has progressed since then, and New York courts have routinely dismissed claims even where, in contrast to the challenged statements here, the reports use colorful or even hyperbolic language to describe Plaintiff's confessed criminal wrongdoing. *See, e.g.*, *BYD Co.*, 2022 WL 598973, at *2 ("hyperbolic" headline stating that plaintiff company was "blacklisted" by President Trump was supported by legislative history and text of act signed into law by the then-President); *Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009) (article privileged even though it "uses more colorful language than" government document; affirming dismissal). Plaintiff's assertion that "Under *Dorr*, NBCU's Statements are clearly not privileged" (Opp. 17) is meaningless because the 1904 *Dorr* case does not represent fair report law in New York or elsewhere.

The Hayes Segment's reference to "storming" or "breaking into" the Capitol fairly reports not only the admitted facts from the Statement of Offense, *see supra,* but also the FBI Affidavit's recitation of Plaintiff's own words in his Tweets ("Patriots were storming from all sides. I was

---

[7] Plaintiff also cites *Greenberg v. Spitzer*, 155 A.D.3d 27, 42 (2d Dep't 2017) for the proposition that fair report is an affirmative defense; this is true, but it does not imply, as Plaintiff asserts (without citation to authority), that "applicability of the privilege cannot be resolved on a motion to dismiss under Rule 12(b)(6)." (Opp. 15 n. 8.) Federal courts routinely apply the New York fair report privilege on motions to dismiss. (*See* 12(b)(6) Open. Br. 21, citing *e.g.*, *Daleiden*, 2022 WL 1013982, at *2); *see also BYD Co. Ltd v. VICE Media, LLC*, 531 F.Supp.3d 810, 821 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *Kesner v. Dow Jones Co.*, 515 F.Supp.3d 149, 177 (S.D.N.Y. 2021). Plaintiff has no answer to this case law.

quite close to entering myself as police began tear gassing us from the door."); video titled "Straka attacking the Capitol on Jan 6th" ("We're going in. We're going in. The people are going in"); and the FBI Agent's description of Plaintiff "moving through the crowd of people to get closer to the entrance . . . As the crowd in front of him tried to push their way into the entrance of the U.S. Capitol, STRAKA yelled, 'Go! Go!'"). (Spears Decl. Ex. 1(1) at PageID#111–112.) Likewise, "take the shield" is a fair (indeed verbatim) report of the FBI Agent's description of what he saw and heard Straka yelling in the video. (*Id.* at PageID#113.)

For these reasons, notwithstanding Plaintiff's argument that he "did not 'confess' to helping assault a police officer" (Opp. 16), the Melber Segment also fairly reports the stipulated facts underpinning Plaintiff's conviction, *i.e.*, encouraging a mob that was physically confronting outmanned Capitol Police to disarm a police officer. (*See supra.*) Describing that conduct as trying to help an attack on a police officer falls well within the leeway provided by Section 74, under which reporters' language "should not be dissected and analyzed with a lexicographer's precision," because, "of necessity," a news report condensing events must "reflect to some degree the subjective viewpoint of its author." *Holy Spirit Ass'n v. N.Y. Times Co.*, 49 N.Y.2d 63, 68 (1979). The fact that the Segments did not spell out the specifics of the offense with legal precision in no way divests the privilege. "Newspapers cannot be held to a standard of strict accountability for use of legal terms of art in a way that is not precisely or technically correct by every possible definition," lest "the purposes of . . . statutes like section 74 of the Civil Rights Law" be defeated. *Becher v. Troy Publ'ng Co., Inc.*, 183 A.D.2d 230, 234 (3d Dep't 1992) (affirming dismissal).

Plaintiff's reliance on *Dershowitz v. Cable News Network, Inc.*, 541 F.Supp.3d 1354 (S.D. Fla. 2021) (Opp. 17) is misplaced. Applying Florida fair report law, the court there held that defendant's characterization of Alan Dershowitz's argument at former President Trump's impeachment trial (that he "believes a President can do anything, even commit crimes if it would

help his re-election") "changed the gist" of what Dershowitz actually said (that "an illegal motive for a quid pro quo would be corrupt" and impeachable), and as such, the report was not a fair and accurate summary of Dershowitz's statement. *Id.* at 1365–66. But in contrast, the Segments here did not "change the gist" of the facts underlying Plaintiff's criminal conviction. Just the opposite, they aptly described his confessed conduct that day.[8]

Further, as *Dershowitz* specifically noted, "the media has no obligation to present additional information that would present a subject in a better light." *Id.* at 1366 (citing *Larreal v. Telemundo of Florida, LLC*, 489 F.Supp.3d 1309, 1322 (S.D. Fla. 2020) (fair report privilege applied to report that plaintiff was arrested during an undercover drug raid even though report omitted that he was arrested on a traffic-related warrant)). Just so, and *a fortiori*, the Segments do not forfeit fair report protection because they did not note, as Plaintiff would prefer, that his conviction was for a criminal "misdemeanor" offense. There is "no requirement that the publication report the plaintiff's side of the controversy" to be protected under Section 74. *Alf v. Buffalo News, Inc.*, 100 A.D.3d 1487, 1488–89 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013) (article stating plaintiff and his company "repeatedly and fraudulently overcharged the government" protected even though plaintiff was not charged personally and company "pleaded guilty to only a single charge of falsifying a proof of delivery document"). Indeed, both Section 74 and the First Amendment foreclose Plaintiff's attempt to interfere with the editorial process. *See Sassower v. N.Y. Times Co.*, 48 A.D.3d 440 (2d Dep't 2008) (article was fair report even though it "failed to include and recount certain information as desired by the plaintiff" and "omit[ted] certain details"; affirming dismissal)

---

[8] Plaintiff also cites *Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 521 (S.D.N.Y. 2012) (Opp. 17) for the proposition that "Section 74 does not afford protection if the specific statements at issue, considered in their context, suggest more serious conduct than that actually suggested in the official proceeding." That does not help him either: the Segments discussed precisely the conduct that Plaintiff confessed to, and Plaintiff had to acknowledge the seriousness of that conduct as part of his plea agreement. (*See* 12(b)(6) Open. Br. 4–5, 18 n. 8.)

(citing *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("the exercise of editorial control and judgment" is constitutionally protected).).

### E.      Plaintiff's False Light Claim Fails Along With His Defamation Claim.

Plaintiff does not dispute that New York does not recognize false light, and even if Nebraska law applied, his false light claim must be dismissed along with the defamation claim. Saying he is "not required to elect his remedies" at the pleading stage (Opp. 18) is a non-answer.[9]

## II.      TRANSFER IS WARRANTED UNDER 28 U.S.C. § 1404(a).

With no answer to the law and undisputed evidence that this case does not belong in Nebraska and should be transferred to SDNY, Plaintiff's leadoff argument is to assert frivolously that transfer should be denied outright because "NBCU failed to file a supporting brief." (Opp. 19 (citing Local Rule 7.1(a)).) Of course, NBCU *expressly* joined in the transfer motion (and incorporated brief) of Hayes and Melber (*see* Doc. 18 at 13 n. 10; *see also* Docs. 15, 16, 19), and Plaintiff's Opposition spends six pages responding to this supposedly nonexistent brief. (Opp. 16–23.) Plaintiff's attempted misuse of the Court's Rules is pure gamesmanship, revelatory of his lack of any answer to the motion's merits.

### A.      The "Balance of Convenience" Factors Strongly Favor Transfer to SDNY.

#### 1.      Plaintiff Failed to Rebut That SDNY Is Not Burdensome for Him, and Is Indisputably More Convenient for NBCU.

Plaintiff argues that transferring to SDNY would merely shift the burden from NBCU to him. But Plaintiff would *not* be burdened by litigating in SDNY, as demonstrated by NBCU's proffered *and unrebutted* evidence of Plaintiff's significant New York contacts, his New York-

---

[9]  Plaintiff also does not dispute that Nebraska's false light cause of action requires him to prove actual malice. He misrepresents that NBCU "agrees" he "sufficiently alleges actual malice" (Opp. 5 n. 4); NBCU stated the exact opposite. (Open. Br. 22 n.10 ("Plaintiff has not plausibly alleged and could not establish actual malice").) Plaintiff's inability to meet that daunting standard would doom not only the false light claim, but his entire Complaint even if it could (and it cannot) survive this Motion. (*Id*.)

based business, and New York as the focus of his career. (*See, e.g.*, Transfer Br. [Doc. 18] 3–4 (Plaintiff lived in New York for twenty years (from 2000–2020) and runs the #WalkAway Campaign, which he established in New York and has a New York address).) Plaintiff does not respond to this evidence *at all*; it should be deemed established and weighs heavily in favor of transfer. *See Matter of Trusts*, 241 F.Supp.3d 905, 929 (D. Minn. 2017) (facts regarding transfer not "genuinely disputed in light of the sworn testimony" and "lack of any alternative testimony offered in opposition"); *Matter of Owens*, 96 B.R. 215, 218 (Bankr. W.D. Mo. 1988) (transfer opponents' failure "to document the facts and circumstances which might evidence a more serious inconvenience to them is fatal to their opposition").

### 2.   The Conduct At Issue Indisputably Occurred in SDNY, Where the Primary Witnesses and Documents Reside.

Plaintiff also ignores and should be deemed to concede that the locus of the complained-of conduct occurred in New York, where NBCU's offices are located, and where the Segments were researched, produced and broadcast. (*See* Transfer Br. 19–20.) Documents relating to NBCU's research and production of the Segments are necessarily in New York (which Plaintiff apparently concedes; *see* Opp. p. 24). As this Circuit has recognized, "if the need arises to refer to original documents or evidence in the litigation [the transferee forum] would prove more convenient." *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010).

So too, the most important NBCU liability witnesses are located in New York or D.C. (*see* Transfer Br. 18–19), including (now non-party) witnesses Hayes and Melber, who both reside in New York. Setting aside the willingness of those many witnesses to travel to Nebraska, the inconvenience is overwhelming, and even video depositions would not cure the convenience issue for trial. On the other hand, the *only* Nebraska witness that Plaintiff has identified is himself—and even he has substantial New York ties, including his business there. Plaintiff's assertion that

16

Nebraska is convenient for "[his] witnesses" is hollow, as he does not identify any of "[his] witnesses"—other than Virginia-based CPAC Chairman Matt Schlapp. (*See* Opp. 23.)

      **3.    The Governing "Significant Relationship" Test Mandates Application of New York Law.**

Plaintiff's argument that Nebraska rather than New York law applies (Opp. 13–14) misstates the law. While acknowledging that the Restatement's "most significant relationship" test applies here, he cites authority that does not apply that test. (*See id.* 14, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (personal jurisdiction case that does not discuss the most significant relationship test); *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 141 (2d Cir. 2022) (under Virginia's *lexi loci delicti* rule, substantive law of the state where plaintiff incurred the greatest reputational injury applies).

Ironically, *Nunes* expressly *distinguished* the most significant relationship test from *lexi loci delicti*, explaining that most significant relationship "account[s] for considerations other than the place of injury." *Id.* at 144. Those considerations involve "the place where the conduct causing the injury occurred," which here is New York. Further, the unrebutted evidence is that any alleged reputational harm related to Plaintiff's national public figure status and #WalkAway Campaign business is centered either in New York or nationwide. (*See* Transfer Br. 20–21.) Because New York law applies (and in all events governs applicable privileges for the news reports at issue), New York has a much greater local interest in this dispute, and this factor strongly favors transfer.

**B.    The "Interest of Justice" Factors Strongly Favor Transfer to SDNY.**

      **1.    Judicial Economy Strongly Favors Transfer, Particularly Given Dismissal of Hayes and Melber Without Prejudice.**

Now that Plaintiff dismissed Hayes and Melber without prejudice, the judicial economy of transferring to SDNY is even stronger. If the Court denies transfer and Plaintiff re-files his same defamation claims against Hayes and Melber in New York, there will be materially similar

litigation in two forums. That is the opposite of judicial economy. *See Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co.*, 485 F.Supp.3d 1048, 1062–63 (D. Neb. 2020).

### 2.   Plaintiff Does Not Respond to NBCU's Evidence That His Business Is in New York, Thus Diminishing Any Comparative Costs.

Though Plaintiff portrays himself as an "individual battling a giant" (Opp. 24), he boasts of his national prominence as "a conservative journalist, political commentator, activist and prominent social media influencer." (Compl. ¶ 1.) The unrebutted evidence is that his career as a political activist and influencer is based in New York (where his #WalkAway business is located) and that he travels around the country for that business. (*See* Transfer Br. 22.) Plaintiff undeniably has the means to travel to New York from Nebraska if this case is transferred. (*See id.*)

### 3.   Little Weight Should Be Given to Plaintiff's Choice of Forum Under These Circumstances.

Plaintiff's reliance on the deference generally afforded to a plaintiff's choice of forum (Opp. 22–23) is unavailing here. Such deference "is based on an assumption that the plaintiff's choice will be a convenient one," *In re Apple*, 602 F.3d at 913, and for all the reasons above, Plaintiff's choice to litigate in his (most recent) place of residence is not convenient for witnesses. (*See* Transfer Br. 22.) Courts also give a plaintiff's forum choice less weight where, as here, the underlying facts giving rise to Plaintiff's claims undoubtedly occurred in the proposed transferee forum. (*See id.*)  Plaintiff's continuing ties to New York further undermine any basis for deference to his choice of a Nebraska forum.

Finally, Plaintiff's defamation claims implicate NBCU's First Amendment rights, which also warrants giving Plaintiff's forum choice lesser weight. *See Fodor v. Berglas*, 1994 WL 822477, at *7 (C.D. Cal. Dec. 27, 1994) ("plaintiff's choice of forum must be given less weight than might otherwise be afforded under a § 1404(a) analysis[,]" citing "the chilling effect on First

18

Amendment rights when a defendant is subjected to a trial involving weeks or months and a tremendous expense in a forum several hundred miles from his home and occupation.").

Transfer to SDNY should be granted.

## **CONCLUSION**

NBCU respectfully requests the Court dismiss the Complaint with prejudice, or alternatively, transfer this case to SDNY.

Dated: May 10, 2023                          Respectfully submitted,

NBCUNIVERSAL MEDIA, LLC, Defendant,

By:   _/s/ Natalie J. Spears___
    Natalie J. Spears (pro hac vice)
    Samuel Fifer (pro hac vice)
    Gregory R. Naron (pro hac vice)
    DENTONS US LLP
    233 South Wacker Drive, Suite 5900
    Chicago, Illinois 60606
    Phone: (312) 876-8000
    natalie.spears@dentons.com
    samuel.fifer@dentons.com
    gregory.naron@dentons.com

    Michael C. Cox
    KOLEY JESSEN P.C., L.L.O.
    125 S. 103rd St., Suite 800
    Omaha, Nebraska  68124
    Phone:  (402) 343-3703
    mike.cox@koleyjessen.com

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with L.R. 7.1(d)(3) and that the word-count function was applied to all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 365 and contains 6492 words.

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing **DEFENDANT NBCUNIVERSAL MEDIA, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)** was filed on May 10, 2023 using the CM/ECF system.

*/s/ Natalie J. Spears*
Natalie J. Spears